# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD ALLEN ARNOLD**,<br><br>                                    Petitioner,<br><br>                    vs.<br><br>**DIRECTOR OF CORRECTIONS-<br>REHABILITATION; BEN CURRY,<br>Director of Corrections,**<br><br>                                    Respondent. | Civil No.          07-cv-1400-LAB(POR)<br><br>**REPORT AND RECOMMENDATION<br>THAT PETITION FOR WRIT OF<br>HABEAS CORPUS BE DENIED** |

State prisoner Richard Allen Arnold ("Arnold"), proceeding *pro se* and *in forma pauperis,* filed a Petition For Writ Of Habeas Corpus pursuant to 28 U.S.C. § 2254.  He challenges his October 2002 convictions by a jury, in San Diego County Superior Court, for first-degree murder, attempted murder, and related charges arising from a stabbing incident on June 19, 2001.  Three of the six grounds in his First Amended Petition ("the Petition") survived Respondent's Motion To Dismiss.  There is no dispute that the surviving claims are exhausted, and that his federal habeas petition was timely filed. After thorough consideration of the lodged record, controlling legal authority, and for the reasons discussed below, it is recommended that the Petition be **<u>DENIED</u>** in its entirety.

## I.       BACKGROUND

The factual background and procedural history of this case are recited in the Court's Order of September 10, 2008, which granted Respondents' Motion To Dismiss Mixed Petition. [Dkt No. 36.] The Order also delayed entry of judgment, denied Arnold's Motion To Stay And Hold In Abeyance,

and presented Arnold with the option to withdraw the Petition's unexhausted claims and proceed with the exhausted claims. Arnold elected to abandon his unexhausted claims (Grounds One, Five, and Six) and proceed on the merits of his exhausted claims, which are:

Ground Two:     ineffective assistance of counsel and denial of evidentiary hearing;

Ground Three:   denial of right to confront adverse witnesses; and

Ground Four:    denial of right to present a complete defense.

[Dkt No. 44.]

The parties do not challenge the accuracy of the state court's recitation of the underlying facts. (See Traverse Points and Authorites ("P&A") [Dkt No. 50] at 2)("Petitioner acknowledges that the facts which this court should consider to be established at trial are those in Court of Appeal's [unpublished October 2004] opinion [on direct appeal]"). In summary, on the evening of June 19, 2001, after years of volatility in the marriage and months of disputes over the custody of children, Arnold stabbed his wife, Heather Olafson, and Scott Olafson, his wife's brother. Scott died, but Heather survived and testified at Arnold's trial.[1] The defense conceded that Arnold had stabbed both Scott and Heather, but argued Arnold acted in self-defense or under a mistaken belief the Olafsons planned to kill him.[2]

A jury convicted Arnold on October 31, 2002 of first-degree murder, attempted premeditated murder, residential burglary, assault with a deadly weapon, corporal injury to spouse, and two counts of making a criminal threat, and found that Arnold used a deadly weapon and inflicted great bodily injury. (Suppl. Lodg. 15, Clerk's Transcript ("CT"), Vol. 2, pp. 267-77.) At a hearing on

---

[1] As previously summarized by the Court: "According to [the prosecution's] version of events, Heather and Scott were watching television in their mother's condo. Armed with a knife, Scott went to investigate noises they heard in the attached garage. Heather heard the door connecting the garage and the house open, then Scott yelling for help. She called 911, then saw Arnold, who had broken in, running up the stairs. As she tried to escape, he chased her through the house, stabbed her twice in the back of the neck, then dragged her from the kitchen to the dining room, repeatedly hitting and kicking her. Lodg. 1 at pp. 5-6; Lodg. 6. Scott had been stabbed multiple times in the face, neck, and chest. Neighbors came to Heather's aid, and they and Heather later identified Arnold as the attacker." [Dkt No. 36 at 3.]

[2] According to the defense's theory, Arnold came to the condo about 10:00 p.m. to pick up his children, as pre-arranged with Heather. When he knocked on the front door, Scott attacked him with a knife. Arnold was able to take the knife from Scott and kill him with it. Heather then retrieved the knife and attacked Arnold, sustaining her wounds in that struggle.

February 28, 2003, the court denied Arnold's motion for a new trial and sentenced him to 25-years-to-life for the first-degree murder conviction, and an additional nine years, eight months for the other counts. Id. at 341-42.

The state courts upheld Arnold's convictions through direct review and three unsuccessful habeas petitions, but made a minor sentence adjustment. (See Order of Sep. 10, 2008 [Dkt No. 36] at 4-7.) The decisions pertinent to resolution of the instant federal Petition on the merits are Lodgment 1, the Court of Appeal's reasoned decision of October 26, 2004, which decided Arnold's direct appeal, and Lodgment 12, the Court of Appeal's reasoned decision of July 11, 2006, which denied Arnold's state habeas petition, filed May 11, 2006.

## II.    DISCUSSION

### A.    Legal Standards For Federal Habeas Relief

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997). The AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (citation omitted). In particular, federal habeas relief is warranted only if the result of a claim adjudicated on the merits by a state court was (1) "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Bell v. Cone, 535 U.S. 685, 694 (2002). A decision is "contrary to" federal law if it (A) applies a rule that contradicts governing Supreme Court authority, or (B) confronts facts materially indistinguishable from a Supreme Court decision but reaches a different result. Early v. Packer, 537 U.S. 3, 8 (2002). To be found "unreasonable," the application of the precedent "must have been more than incorrect or erroneous;" it "must have been objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (internal quotations omitted).

1    The summary denial of a habeas petition by the California Supreme Court constitutes a

2    decision on the merits of the federal claims presented.  Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th

3    Cir. 1992).  Specifically, "[w]here there has been one reasoned state judgment rejecting a federal

4    claim, later unexplained orders upholding the judgment, or rejecting the same claim, rest upon the

5    same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Thus, when applying the AEDPA

6    standards, the federal courts "review the 'last reasoned decision' by a state court."  Campbell v. Rice,

7    408 F.3d 1166, 1170 (9th Cir. 2005)(citations omitted).  Accordingly, the Court shall review the

8    California Court of Appeals' opinion of July 11, 2006 (Lodg. 12), which was the last reasoned

9    decision by a state court addressing Arnold's federal claims.

10       **B.**       **Inadequate Showing For Evidentiary Hearing**

11    Arnold requests an evidentiary hearing, arguing that his self-defense and heat of passion

12    defense could have been substantiated with evidence.  (Traverse P&A at 10.)  The AEDPA provides

13    an initial hurdle to obtaining an evidentiary hearing:

14

15    If the applicant has *failed to develop the factual basis of a claim* in State court proceedings, the
     court shall not hold an evidentiary hearing on the claim unless the applicant shows that— (A) the claim relies
16    on— (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court,
     that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered
17    through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish
     by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found
18    the applicant guilty of the underlying offense.

19    28 U.S.C. § 2254(e)(2)(emphasis added).  Thus, the threshold inquiry is whether the petitioner has

20    developed the factual basis of the relevant claim in the state courts.  See Williams v. Taylor, 529 U.S.

21    420, 429-37 (2000).  If Arnold has failed to do so, then Section 2254(e)(2) prohibits an evidentiary

22    hearing "unless the statute's other stringent requirements are met."  Id. at 437.  In the alternative, if

23    Arnold was "diligent in developing the record," the requirements of Section 2254(e)(2) do not apply.

24    Id.

25    Diligence, as required by Williams, is satisfied where "the prisoner made a reasonable attempt,

26    in light of the information available at the time, to investigate and pursue claims in state court."  Id.

27    at 435.  Based on the submitted record, Arnold made a reasonable attempt to develop the factual

28    record for his ineffective assistance of counsel claim.  Specifically, Arnold moved the state trial court

07cv1400

for an evidentiary hearing on the claim immediately following his conviction.  (Suppl. Lodg. 16, Reporter's Transcript ("RT"), Vol. 9, at 1277-90.)  The trial judge denied this motion.  With respect to the subsequent state habeas petitions, Arnold "was not required to request an evidentiary hearing under California law because his state habeas petitions were dismissed before [he] reached the traverse stage." Griffey v. Lindsey, 345 F.3d 1058, 1066 (9th Cir. 2003), vacated on other grounds as moot, 349 F.3d 1157 (9th Cir. 2003)(petitioner died).  Therefore, the Court finds that Arnold was sufficiently diligent in attempting to develop the factual record of his ineffective assistance of counsel claim, and thus, the requirements of Section 2254(e)(2)(i) and (ii) do not preclude an evidentiary hearing.

However, even if the petitioner's "claim is not precluded by [Section] 2254(e)(2), that does not mean he is entitled to an evidentiary hearing–only that he *may* be." McDonald v. Johnson, 139 F.3d 1056, 1059-60 (5th Cir. 1998)(emphasis in original); see also Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  If the petitioner "has not 'failed to develop' the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required, under Townsend v. Sain, 372 U.S. 293 (1963)." Insyxiengmay, 403 F.3d at 670.  In Townsend, the U.S. Supreme Court concluded that a petitioner is entitled to an evidentiary hearing if:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; *or*

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

372 U.S. at 313 (emphasis added).  Although neither party explicitly addresses the Townsend test, Arnold touches on prongs 3, 5, and 6 in his argument.  Specifically, Arnold asserts that (A) at trial, he was denied the opportunity to introduce evidence to substantiate theories of self-defense and a heat of passion defense; and (B) after conviction, the trial judge denied Arnold's request for an evidentiary hearing to present evidence of his trial counsel's substandard performance.

Neither of Arnold's arguments persuades the Court that an evidentiary hearing is warranted

07cv1400

under the <u>Townsend</u> analysis.  With respect to the third and sixth <u>Townsend</u> prongs, the record reveals that the state court conducted extensive hearings on both the motions in limine (Suppl. Lodg. 16, RT, Vol. 1) and the post-trial motion for an evidentiary hearing (Suppl. Lodg. 16, RT, Vol. 9).  At the motions in limine hearing, the defense proffered witnesses who would testify that Heather molested Arnold's son and bore a child, Zachary, by Arnold's nephew.  (Suppl. Lodg. 16, RT, Vol. 1 at 23-38, 45-59.)  Furthermore, in moving for an evidentiary hearing after Arnold's conviction, new defense counsel explained, in detail, the evidence that would be presented at the evidentiary hearing, if granted, to prove the ineffective assistance of trial counsel.  (Suppl. Lodg. 16, RT, Vol. 9, at 1277-90.) Although the court excluded the evidence of molestation and denied an evidentiary hearing, the record demonstrates that the hearings were "full and fair."

With respect to the fifth prong of the analysis, Arnold fails to identify any material fact that is not currently contained in the record.  As noted by the California Court of Appeals, in its opinion of July 11, 2006, "[t]he record shows counsel did develop and offer the molestation evidence in support of the theory Arnold 'snapped' because of the molestations . . . ." (Lodg. 12 at 1.)  Similarly, the record also contains the defense's theory that Arnold "acted in self-defense or under the mistaken belief that Scott and [Heather] Olafson were going to attack him."  (Court of Appeal's Opinion of Oct. 26, 2004 [Lodg. 1] at 7.)  Arnold does not explain how an evidentiary hearing would produce material facts not already presented to the state courts.  It is well established law that "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record."  <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998)(citing several decisions).  Therefore, it is recommended that the Court **<u>DENY</u>** the request for an evidentiary hearing, as the Court can resolve all claims in the Petition through review of the state court record.

## C.      <u>Request For Appointment Of Counsel</u>

Arnold asks the Court to "[a]ppoint counsel or provide reasonable attorney's fees."  (Traverse P&A at 16.)  Every defendant has an absolute right to counsel on direct appeal from a conviction, but there is no constitutional right to appointment of counsel in collateral proceedings.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 756-57 (1991).  Nevertheless, when a federal court "determines that the interests of justice so require, representation may be provided for any financially eligible person who"

1    is seeking relief under 28 U.S.C. § 2254.  18 U.S.C. § 3006A(a)(2)(B).

2         Courts consider various factors in exercising their discretion to appoint counsel.  Those factors

3    include the legal or factual complexity of the petition, the likelihood of success on the merits, the

4    petitioner's understanding of the issues, and the petitioner's ability to investigate and to present the

5    claims.  See LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (no abuse of discretion to deny

6    appointment of counsel when district court pleadings demonstrated petitioner's "good understanding

7    of the issues and the ability to present forcefully and coherently his contentions").  Arnold has

8    demonstrated a thorough understanding of the issues and has capably presented the claims himself.

9    His claims present no unusual factual or legal complexity.  Each of his three prior requests for

10   appointment of counsel [Dkt Nos. 9, 17, 30] was denied [Dkt Nos. 12, 20, 35].  Moreover, he has

11   proceeded *pro se* throughout his federal proceedings with no evidence that he has incurred any

12   attorneys' fees.  Therefore, it is recommended that the request for counsel or attorneys' fees be

13   **DENIED**.

14        **D.**    **Analysis of Claims on the Merits**

15        After the Court conditionally dismissed his Petition for failure to exhaust three of his claims

16   in state court [Dkt No. 36], Arnold elected to abandon the unexhausted claims and proceed on the

17   following three claims: (1)  ineffective assistance of trial counsel and improper denial of evidentiary

18   hearing (Ground Two); (2) denial of right to confront witnesses (Ground Three); and (3) denial of

19   right to present a complete defense (Ground Four).  [Dkt No. 44.]  The Court addresses each claim in

20   turn.

21
22        **1.**    **Ground Two:  Ineffective Assistance Of Counsel and Improper Denial of**
                     **Evidentiary Hearing**

23        The court appointed defense counsel for Arnold at his arraignment in June 2001.  (Arnold

24   Decl., CT,  Vol. 2 at 288.)  The criminal case was delayed due to a head injury Arnold suffered while

25   in custody.  Sometime in September 2001, Arnold retained attorney Kerry Armstrong to replace

26   appointed counsel.  Id. at 289.  Mr. Armstrong represented Arnold at several pre-trial proceedings, as

27   well as at trial.  After his conviction, Arnold retained new counsel, James Warner, who moved the

28   state trial court for an evidentiary hearing on the ineffective assistance of Mr. Armstrong as counsel.

(Suppl. Lodg. 16, RT, Vol. 9 at 1277-90.)  In Ground Two, Arnold argues his trial representation violated his Sixth Amendment rights.  He also challenges, as a due process violation, the trial court's denial of an evidentiary hearing to substantiate the ineffective assistance of counsel claim.

### a.    Ineffective Assistance Of Counsel

Under Strickland v. Washington, in order to establish a claim of ineffective assistance of counsel, a petitioner must satisfy the following two-prong test: (1) show that counsel's performance was unreasonable under prevailing professional standards (performance prong); and (2) demonstrate that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong).  466 U.S. 668, 687-96 (1984).  To establish the deficient performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under professional norms, viewed from counsel's perspective at the time of the representation.  Id. at 688-89.  Under the prejudice prong, a "reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

When a petition challenges counsel's strategic choices, the reviewing courts owe "a heavy measure of deference to counsel's judgments."  Id. at 691.  More specifically, "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*."  Id. at 690 (emphasis added).  However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.

First, Arnold argues that his trial counsel failed to adequately investigate the facts surrounding Heather's alleged molestation of the children to uncover "sufficient evidence to demonstrate its probative value and relevance" as to a heat of passion defense.  (Traverse P&A at 7.)  Although he "concedes that his trial counsel did conduct an investigation," Arnold asserts it was "inadequate" because the court granted the motion to exclude the molestation evidence.  Id. at 7-9.  Furthermore, as an extension of his failure to investigate theory, Arnold argues counsel also failed to (a) personally meet with defense witnesses to prepare for trial; (b) correct purportedly inadequate investigative reports; and (c) obtain the medical records relevant to Arnold's head injury and loss of memory.  (Pet. at 48-49.)

At the motions in limine hearing, in support of a heat of passion defense theory, Arnold's counsel proffered witnesses who would testify Heather engaged in sexual misconduct with Arnold's son and had a child from her affair with Arnold's nephew. Counsel argued that friends and family members informed Arnold of the sexual abuse over the years, and Arnold "finally snapped." (Suppl. Lodg. 16, RT, Vol. 1 at 23-27.) The court excluded the molestation evidence as more prejudicial than probative, finding Arnold's discovery of the misconduct was too remote from the commission of the charged crimes to support a heat of passion defense. Id. at 55-56.

Arnold's argument that the exclusion of the evidence resulted from the ineffective assistance of counsel is not persuasive. As the California Court of Appeal noted:

> The record shows counsel did develop and offer the molestation evidence in support of the theory Arnold "snapped" because of the molestations, resulting in the attack. The trial court granted the prosecution's motion to exclude the evidence, finding it was either irrelevant or more prejudicial than probative under [California rules of evidence], and that there was an insufficient showing to connect the evidence to Arnold's state of mind at the time of the attack. Arnold has not shown counsel's performance fell below an objective standard of reasonableness and that any [*sic*] absent any error by counsel Arnold would have achieved a better result.

(Lodg, 12 at 1.) Under 28 U.S.C. § 2254(e)(1), the Court of Appeal's factual determination that Mr. Armstrong developed the molestation evidence and offered it in support of a heat of passion defense "shall be presumed to be correct." Moreover, Arnold has failed to "rebut[] the presumption of correctness by clear and convincing evidence." Id.. Therefore, the Court of Appeal's holding that Mr. Armstrong's performance did not "fall below an objective standard of reasonableness" is a reasonable application of Strickland and its progeny.

Even if the Court held that counsel's investigation was objectively unreasonable, however, the record demonstrates that its effect was not prejudicial. The trial court excluded the evidence of molestation and sexual misconduct because "the relevance is outweighed by time consumption and prejudice against the victim." (Suppl. Lodg. 16, RT, Vol. 1 at 56.) Furthermore, the trial judge ruled that "if there's independent evidence through some source that [Arnold] only found out about Zachary's true father recently . . . then this evidence could come in." Id. Notably, Arnold never challenged the fact that he knew Zachary was not his child. No amount of investigation by Mr. Armstrong would have changed that fact. With respect to the remainder of the sexual misconduct, the

07cv1400

1    Court of Appeals concluded "the molestation evidence had virtually no probative value and no

2    constitutional error arose from its exclusion." (Lodg. 12 at 2)(internal quotations omitted). Thus,

3    even if Mr. Armstrong had performed a more robust investigation, there is not a reasonable probability

4    that the result of the motions in limine hearing, or the trial, would have been different. See Strickland,

5    466 U.S. at 694. Accordingly, Arnold has failed to show that prejudice resulted from the investigation

6    of Mr. Armstrong.

7         Second, Arnold argues ineffective assistance of counsel on the grounds that Mr. Armstrong

8    failed to inform Arnold of his right to testify. In particular, Arnold contends that "if Petitioner would

9    have been advised of his right to testify in his defense, over trial counsel's refusal he, as the only

10   percipient witness, could have explained much of what and how the altercation transpired with Scott

11   Olafson, as argued on his motion for new trial." (Traverse P&A at 9-10.) According to Arnold, the

12   "claim of self-defense as well as an alternate heat of passion defense could have been substantiated."

13   Id. at 10.

14        However, the record undermines Arnold's asserted reason for not testifying. For example,

15   at the hearing on the motions in limine, defense counsel proffered doctors as witnesses who had

16   treated Arnold for his head injury and loss of memory "to show the jury why I can't call him to testify

17   in this case." (Suppl. Lodg. 16, RT, Vol. 1 at 18.) The Reporter's Transcript reads:

18            THE COURT: . . . What, if any, medical evidence in reports or otherwise would you
             be able to proffer, Mr. Armstrong, to suggest that he has somehow become disabled
19           to testify in front of a jury by reason of the fall?

20            MR. ARMSTRONG: Well, honestly, Your Honor, I have no medical evidence to
             show that. *All I have is what Mr. Arnold tells me.*
21

22   Id. at 21 (emphasis added). By contrast, at the hearing on the motion for a new trial, Arnold's new

23   counsel argued that "Mr. Armstrong never discussed with Mr. Arnold regarding his right to testify."

24   (Suppl. Lodg. 16, RT, Vol. 9 at 1281.) The inconsistency raises the issue of credibility. As the Court

25   of Appeal noted on direct appeal:

26            The trial court was not persuaded by Arnold's complaint that his counsel "never
             discussed [his] right to testify in [his] own behalf." The court was entitled to discredit
27           Arnold's statement. On appeal, we defer to the trial court's credibility
             determinations . . . .
28

10

(Lodg. 1 at 28-29.)  Furthermore, under 28 U.S.C. § 2254(e)(1), the trial court's determination that Mr. Armstrong discussed the right to testify with Arnold "shall be presumed to be correct" unless Arnold "rebut[s] the presumption of correctness by clear and convincing evidence."  Arnold offers no argument or evidence to reconcile his inconsistent justifications for not testifying at trial.  Thus, the Court finds that Mr. Armstrong informed Arnold that he had the right to testify at trial.

Even assuming that Mr. Armstrong failed to inform Arnold of his right to testify, however, the record demonstrates that the effect was not prejudicial.  As indicated by the Court of Appeal, "[i]f Arnold had testified, his credibility would have been severely tested by the need to deny and explain the evidence of premeditation presented by the prosecution." (Lodg. 1 at 29.)  Specifically, the Court of Appeal culled examples from the record, including evidence of the following:  (1) a heated argument between Heather and Arnold in early April 2001, during which Arnold pinned her to a bed, choked her, put a coat hanger over her neck, and told her "I'm going to kill you bitch;" (2) on May 7, 2001, Arnold went to the condo where Heather was staying, banged repeatedly on the front door and yelled to neighbors that Heather was a "fucking whore;" (3) in the weeks preceding the June 19, 2001 knife attack, Arnold "physically confronted Olafson on several occasions in a frightening manner," and (4) four days before the knife attack, Arnold jumped a fence at the condo, found Heather in the Jacuzzi with their two children, called her "a dead bitch," and threatened that he was going to "fucking kill [her]."  Id. at 2-5.  The court then concluded that "[a]bsent some indication that [Arnold's] testimony might have provided the jury with a basis to reject the evidence that he planned the assault, his failure to testify *could not have affected the verdict*."  Id. at 29 (emphasis added).  The Court agrees and finds that no prejudice resulted from Arnold's failure to testify.

In sum, with respect to both Mr. Armstrong's investigation and Arnold's right to testify, Arnold has not demonstrated that the Court of Appeal's adjudication of the issues on the merits was either  "contrary to, or involved an unreasonable application of clearly established Federal law" or "based on an unreasonable determination of the facts. . . ."  28 U. S. C. § 2254(d).  As Arnold has established neither deficient performance of counsel nor prejudice under the standard of Strickland v. Washington, 466 U.S. 668 (1984), it is recommended that the Court **DENY** Arnold's claim of ineffective assistance of counsel.

07cv1400

1

### b. Post-Trial Denial Of Evidentiary Hearing

2
3

In Ground Two, Arnold also challenges the post-trial denial of an evidentiary hearing as a violation of Due Process. In particular, Arnold argues:

4
5
6
7
8

> When this claim was presented to the trial court, it failed to hold an evidentiary hearing based on Petitioner's counsel's conduct within [*sic*] the four walls of the courtroom. (9 RT 1301). Ironically the court claimed to have considered the evidence that was then before it, however, there was none, because although the court allowed the Petitioner to be heard, it refused to permit him the opportunity to present any evidence to support his claims. His request for the evidentiary hearing was denied. (9 RT 1301) This is despite the fact that most of the errors complained about occurred outside the courtroom. . . .

9

(Traverse P&A at 8-9.)

10
11
12
13
14
15
16
17
18
19
20

On February 27, 2003, the trial court held a hearing on Arnold's motion for a new trial and acknowledged the "subissues [of] whether the court should consider ordering an evidentiary hearing, and, secondly, whether the court needs any written response from the People prior to proceeding." (Suppl. Lodg. 16, RT, Vol. 9 at 1276.) The judge that conducted the hearing was the same judge that presided over the trial. Arnold was represented at the hearing by new retained counsel, Mr. Warner, who argued that an evidentiary hearing was required due to Mr. Armstrong's incompetent representation. Id. at 1277-99. Mr. Warner highlighted Mr. Armstrong's inexperience and described numerous examples of Mr. Armstrong's misconduct. Id. at 1277-90. Additionally, Arnold filed a declaration, "alleging certain things that he says occurred or didn't occur outside of the courtroom." Id. at 1300. The trial court denied the request for an evidentiary hearing based on its "observations during the trial of defense counsel's performance." Id.

21
22
23
24
25
26
27
28

First, although Arnold ostensibly predicates his challenge on federal Due Process rights, the essence of his argument demands habeas relief for a state court's application of state law. Specifically, Arnold argues that a trial judge who denies an evidentiary hearing "solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of [his counsel's] misconduct, abuses the exercise of his discretion to determine the competency of the attorney." (Pet. at 35.) A habeas petitioner "may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). The "alleged errors in the application of state law are not cognizable in federal habeas corpus." Id. Here,

1    Arnold does not explain how a state court's alleged failure to adhere to state court procedural

2    standards, as they relate to granting or denying an evidentiary hearing in state court, constitutes an

3    unreasonable application of federal law.  See 28 U.S. C. § 2254(d).  As a result, Arnold's challenge

4    to the denial of the evidentiary hearing is "not cognizable in federal habeas corpus."  Langford, 110

5    F.3d at 1389.

6            Second, even if the Court liberally construes Arnold's claim to touch upon the type of

7    fundamental fairness guaranteed by federal Due Process, Arnold's reliance on United States v. Cronic,

8    is misplaced.  In Cronic, the U.S. Supreme Court reiterated the importance of the opportunity to be

9    heard:  "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a

10   party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a

11   refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."  466

12   U.S. 648, 653 n.8 (1984)(quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932)).  In the present case,

13   however, the trial court did not "refuse to hear" Arnold's new counsel, Mr. Warner.  Both Mr. Warner

14   and the prosecutor had a full opportunity to present argument; moreover, the court gave Mr. Warner

15   rebuttal time to respond to the prosecutor's argument.  (Suppl. Lodg. 16, RT, Vol. 9 at 1297-99.)  As

16   the Court of Appeals noted on direct appeal, "the procedure for a new trial motion used by Arnold's

17   new counsel afforded Arnold a full opportunity to set forth his claims of incompetency, including the

18   matters occurring outside the record." (Lodg. 1 at 26.)  Therefore, the trial court's denial of the

19   evidentiary hearing requested by Arnold does not rise to the degree of deprivation identified by the

20   Powell and Cronic decisions.  Accordingly, it is recommended that the Court **DENY** Arnold's claim

21   of a Due Process violation for the trial court's denial of an evidentiary hearing.

22                   **2.        Ground Three:  Violation Of Confrontation Clause**

23           As background, the state trial court granted a motion *in limine,* on hearsay grounds, to preclude

24   Heather from testifying at trial to Scott's statements that Arnold had broken into the condo's garage

25   the week before the murder. (Suppl. Lodg. 16, RT, Vol. 1 at 64-69.)  However, at trial, Heather

26   testified that Scott told her about Arnold's break-in.  Specifically, on redirect examination, the

27   prosecutor relied on cross-examination testimony to ask Heather a question about a conversation

28   between Heather and Scott regarding their fear of Arnold.  The court overruled defense counsel's

1   hearsay objection, and Heather responded: "He talked about this one incident where [Arnold] had

2   broke in my mom's house." (Suppl. Lodg. 16, RT, Vol. 3 at 271.) The court immediately sustained

3   defense counsel's renewed objection. The prosecutor instructed Heather to "[t]alk in general" about

4   the conversation and avoid specifics. Heather complied, testifying to general feelings of fear and

5   certain (unelaborated) incidents involving Arnold. Id.

6       Later during redirect examination, however, Heather again testified to the same incident. The

7   prosecutor, referring to the night of the murder, asked: "When you heard that noise downstairs and

8   then heard your brother involved in a struggle, in your mind, did you think you knew who was

9   downstairs with Scott?" Id. at 273. Heather started to respond, "I knew because he prior broke into

10  my mom's–" but was interrupted by defense counsel's objection. The court recessed the jury, then

11  admonished:

12          THE COURT: [I]t does appear to the Court that this witness is taking
            every possible opportunity, despite the Court's ruling to the contrary,
13          to talk about an incident in which the defendant allegedly broke into the
            garage a week earlier. She needs to be reminded by you, and I'll
14          remind her myself at this time, that this evidence has been excluded by
            the Court in [a] pretrial ruling. I do not believe at this point that her
15          references to it are innocent. I believe they're intentional, and she is
            specifically ordered by this court not to talk about an incident in which
16          she believes the defendant broke into the house in question a week
            earlier. She has been asked general questions and comes back with that
17          specific statement. That's off limits . . . .

18  Id. at 273-74. The prosecutor insisted she was not attempting to elicit the excluded evidence, and the

19  court agreed, stating that the prosecutor did not have "any complicity in this at all." The court further

20  noted that the prosecutor had been "as quick as you [defense counsel] . . . to change the subject or

21  interrupt the witness when she talks about" the prior break-in at the condo. Id. at 275.

22      In Ground Three, Arnold argues that his conviction must be reversed "due to the prosecutor's

23  unlawful use of hearsay evidence that the court had ruled inadmissible." (Pet. at 54.) In particular,

24  Arnold asserts "the jury was permitted to hear the testimonial evidence in question and Petitioner was

25  unable to confront the evidence used against him regardless if the evidence was intentionally elicited

26  by the prosecution or not." (Traverse P&A at 10-11.)

27      The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides that "[i]n

28  all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him. . . ."  U.S. Const., Amend. 6.  Furthermore, the Confrontation Clause governs the introduction of hearsay testimony.  Specifically,  the admission of a "testimonial statement against petitioner, despite the fact that he had no opportunity to cross-examine . . . is sufficient to make out a violation of the Sixth Amendment."  Crawford v. Washington, 541 U.S. 36, 68 (2004).  Heather testified to Scott's statement that Arnold broke into the condo's garage.  Scott's statement constitutes a testimonial statement against Arnold, and Arnold had no opportunity to cross-examine Scott.  As a result, Heather's testimony violates the Confrontation Clause of the Sixth Amendment.

However, a constitutional violation does not necessarily warrant habeas relief.  As the Court of Appeals held, "the error is harmless under any standard."  In the Ninth Circuit, "[t]o grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error."  Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005).  Under Brecht v. Abrahamson, the standard for prejudice is "whether the error had substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. 619, 637 (1993)(internal quotations omitted).

The state court's finding of harmless error was reasonable.  The Court of Appeal, on direct appeal, supported its decision as follows:

> Arnold contends . . . inferences, derived from the improper hearsay testimony, bolstered Olafson's credibility while undermining his claim that he knocked on the front door of the condominium and acted in self-defense to Scott's assault.  Assuming that Arnold has not waived the issue by failing to request an admonition to the jury, the error is *harmless under any standard* . . . .  The inferences Arnold contends the jury may have drawn from Olafson's references to a previous unlawful entry into the garage require a great deal of speculation; we are not persuaded the jury would have afforded such a significant impact to her statements.  Moreover, as we set forth earlier, the evidence of a premeditated attack was compelling.  Given the strong showing that Arnold planned to attack Olafson at the condominium, we have no doubt that the jury would have rejected the self-defense claim even if it had not heard Olafson's passing references to a previous break-in.

(Lodg. 1 at 21-22)(emphasis added).  The Court of Appeal extended its ruling to include finding the error "harmless beyond a reasonable doubt," which, under federal law, is the correct standard on direct review.  Neder v. United States, 527 U.S. 1, 15 (1999)(reiterating that "the test for determining whether a constitutional error is harmless . . . is whether it appears 'beyond a reasonable doubt that

15

the error complained of did not contribute to the verdict obtained'")(quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)).  Thus, the state court's decision was not "contrary to . . . Supreme Court harmless error precedent."  <u>Inthavong</u>, 420 F.3d at 1059.  Furthermore, based on the overwhelming evidence of a premeditated attack (Lodg. 1 at 2-5), the Court finds that the hearsay testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 637.  Accordingly, it is recommended that the Court **<u>DENY</u>** Arnold's claim for habeas relief under the Confrontation Clause of the Sixth Amendment.

### 3.  Ground Four:  Obstruction Of Complete Defense

In Ground Four, Arnold asserts that the trial court denied his "right to present a complete defense . . . in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (Traverse P&A at 13.)  Specifically, Arnold identifies the trial court's exclusion of the molestation evidence, arguing that "[a]ll of the evidence supporting a heat of passion instruction was excluded, the court failed to provide an instruction as there was now no evidence to support that instruction, and obviously there could be no argument to support a finding that the jury was unable to make." <u>Id.</u> at 16.

First, to the extent the molestation evidence is irrelevant to the heat of passion defense sought by Arnold, the exclusion of this evidence cannot rise to constitutional error.  A criminal "defendant has no right . . . to present irrelevant evidence." <u>Wood v. Alaska</u>, 957 F.2d 1544, 1549 (9th Cir. 1992). Instead, "[h]e is limited to issues relevant to the trial, and it is within the broad discretion of the trial court to determine which issues are relevant." <u>United States v. Torres</u>, 937 F.2d 1469, 1473 (9th Cir. 1991)(internal quotations omitted).  On direct appeal, the California Court of Appeal questioned the relevance of the molestation evidence:

> Thus, it is clear Arnold had formed his belief about the last molestation at least several weeks before he attacked Olafson.  When evaluated from the perspective of a reasonable person, the passage of several weeks is clearly adequate time for "passion to subside and reason to return . . ." so as to dissipate a murderous rage.  [Citation omitted.]  The adequacy of the cooling-off period is further buttressed by the fact that Arnold apparently knew about the other molestations and the affair with the nephew for several years before the knife attack; thus, this was not a situation where he was suddenly confronted with the provocation and then initiated the attack.

(Lodg. 1 at 16.)  The Court of Appeal concluded that "the molestation evidence had *virtually* no

16

07cv1400

probative value. . . ." Id. at 17 (emphasis added).  However, a finding that evidence "virtually" lacks probative value is not equivalent to evidence *actually* lacking probative value.  Thus, the issue becomes whether constitutional error arose from the exclusion of evidence that embodied at least a modicum of relevance.

Under the Sixth Amendment right to present a defense, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 523 U.S. 303, 308 (1998).  In general, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," and "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " Id. (citations omitted).  Here, the trial court excluded the molestation evidence under California Evidence Code Section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  In particular, the trial court held under Section 352 that "the relevance [of the molestation evidence] is outweighed by time consumption and prejudice against the victim." (Suppl. Lodg. 16, RT, Vol. 1 at 55-56.)  Evidence Code Section 352 serves the same purpose as Federal Rule of Evidence 403,[3] and Arnold does not argue that the rule is arbitrary or disproportionate to this purpose.  Therefore, unless the trial court failed to "advance[] any rational justification" for the exclusion, Crane v. Kentucky, 476 U.S. 683, 691 (1986), Arnold's claim must fail.

The trial court justified the exclusion of the molestation evidence on two grounds.  First, the timing of the alleged molestation was too remote from the commission of the knife attack to support a heat of passion defense.  (Suppl. Lodg. 16, RT, Vol. 1 at 27, 55-56.)  Second, the court stated that the relevance of the molestation evidence would have been outweighed by prejudice against Heather.  The Court of Appeal agreed, holding "the molestation evidence had virtually no probative value and

---

[3] Federal Rule of Evidence 403 provides:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

07cv1400

1   no constitutional error arose from its exclusion." (Lodg. 1 at 17.) These justifications are rational and

2   persuasive, not arbitrary.  Accordingly, pursuant to the deference owed to state court evidentiary

3   decisions, no constitutional error arose from the exclusion of the molestation evidence.  Crane, 476

4   U.S. at 691.

5          Additionally, Arnold cites Morris v. Ylst, 447 F.3d 735 (9th Cir. 2006), for the proposition that

6   the prosecutor violated his constitutional rights by introducing false evidence that Heather did not

7   molest Arnold's son, Vernon.  However, this argument lacks merit.  Under Ylst, "a conviction will

8   be reversed if two conditions are met: first, the prosecution knowingly presented *false* evidence or

9   testimony *at trial*; and, second, it was material, that is, there is a reasonable likelihood that the false

10  evidence or testimony could have affected the judgment of the jury."  Id. (emphasis added)(citing

11  United States v. Agurs, 427 U.S. 97, 103 (1976)).  At the motions in limine hearing, the prosecutor

12  stated:  "Vernon told child protective service worker John Rochfort . . . that Heather did not molest

13  him anyway, and that he only said that to the deputy [sheriff] because he [Vernon] was afraid of what

14  his father [Arnold] would do if he didn't agree with him."  (Suppl. Lodg. 16, RT, Vol. 1 at 49.)  The

15  trial court excluded all evidence on the issue of molestation, and as a result, the prosecutor did not

16  introduce Vernon's alleged statement to child protective services *at trial*.  Furthermore, it is not clear

17  that the statement was false.  The California Court of Appeal noted that "the proffered evidence

18  regarding the molestation of [Vernon] was more tenuous. . . ."  (Lodg. 1 at 14.)  Thus, based on the

19  record, the Court cannot find that the prosecutor knew, or should have known, that Vernon's denial

20  of molestation was false.  Finally, even if the prosecutor knew her statement was false, the statement

21  did not affect the outcome of the trial.  Specifically, "there was a significant period of time between

22  Arnold's knowledge of the purported molestations and the crimes such that . . . the molestation

23  evidence had virtually no probative value . . . ."  Id. (Court of Appeal, on direct appeal).  Therefore,

24  Arnold's reliance on the prosecutor's statement at the motions in limine hearing, regarding Vernon's

25  alleged statement to child protective services, is misplaced.

26         In sum, it is recommended that the Court **DEN Y** Arnold's claim for habeas relief under the

27  Sixth Amendment right to present a complete defense.

28  //

18

07cv1400

**III.     CONCLUSION AND RECOMMENDATION**

The Court submits this Report and Recommendation to United States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the request for an evidentiary hearing be **DENIED**, the request for appointment of counsel be **DENIED**, and the habeas Petition be **DENIED** in its entirety.  **IT IS FURTHER RECOMMENDED** the Court issue an Order:  (1) approving and adopting this Report and Recommendation; (2) directing that Judgment be entered denying the Petition; and (3) denying a Certificate of Appealability.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court on or before **April 16, 2010**, and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **April 30, 2010**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See* Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  March 24, 2010

LOUISA S PORTER
United States Magistrate Judge

cc:          The Honorable Larry A. Burns
             All parties

19